

**DISTRICT ATTORNEY'S OFFICE**
THREE SOUTH PENN SQUARE
PHILADELPHIA, PENNSYLVANIA 19107-3499
(215) 686-8000

LAWRENCE S. KRASNER
DISTRICT ATTORNEY

September 17, 2019

Honorable Marilyn Heffley
United States Magistrate Judge
James A. Byrne Courthouse
601 Market Street, Room 4001
Philadelphia, PA 19106

       **RE:**   ***Beckett v. Kauffman, et al***
                **Civil Action No. 19-CV-2525**

Dear Judge Heffley:

      Enclosed please find a copy of our Response to the Petition for Writ of Habeas

Corpus, filed today.

                        Respectfully submitted,

                             /s/

                        SAMUEL H. RITTERMAN
                        Assistant District Attorney

Enclosure
cc:  Rahmik Beckett, *pro se*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAHMIK BECKETT** | : | **CIVIL ACTION** |
| **v.** | : | |
| **KEVIN KAUFFMAN, et al** | : | **NO.  19-2525** |

### RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS[1]

A jury convicted petitioner of voluntary manslaughter, carrying a firearm without a license, possession of an instrument of crime, and assault of a law enforcement officer (Docket Number CP-51-CR-0003562-2012).[2]   Petitioner now seeks federal habeas relief.  None is due.  All of petitioner's claims are defaulted and/or meritless.

### FACTUAL AND PROCEDURAL HISTORY

In the early evening of September 28, 2011, the victim, 24-year-old Kevin Jones, attended a recreation-league basketball game at Audenried School at 32nd and Tasker Streets in Philadelphia. Petitioner, who believed that the victim had killed his friend Kyleem Spain, saw the victim at the game. He left the gym to retrieve his semi-automatic gun (N.T. 2/20/14, 177-181, 199; N.T. 2/20/14, 237-260; 2/21/14, 143-144).

Minutes later, at 8:22 p.m., Philadelphia Police Officer Mark Davis was on his way to investigate an unrelated shooting at 26th and Tasker Streets. As he drove to that scene, he saw petitioner, dressed all in black and wearing a hoodie, run across 32nd

---

[1]     District Attorney Lawrence S. Krasner represented petitioner at trial. In accordance with the Conflict Resolution Protocol of the Philadelphia District Attorney's Office, District Attorney Krasner has been screened from all participation in this matter.

[2]     See https://ujsportal.pacourts.us/ for all current Pa. docket information.

and Dickinson Streets and fire a semi-automatic weapon at a group of people at 32nd and Tasker Streets. Officer Davis ordered petitioner to drop his gun. Petitioner fired two shots at him. Standing over the victim, who had fallen behind a van following his initial barrage, petitioner then fired five or six more shots at him. Having emptied his gun of fourteen bullets, petitioner discarded it and ran to a car he had parked at 32nd and Dickinson Streets. The officer fired at him and grazed him in the head. It took four officers to subdue petitioner. The police then recovered petitioner's .40 Glock. Petitioner's fusillade not only killed the victim but also broke the jaw of Shayna Lovett, a young mother who was walking on the crowded street with her two children (N.T. 2/19/14, 166-195, 228; 2/20/14, 81, 161-181, 214-221; N.T. 2/21/14, 110).

The victim suffered at least seven, and possibly as many as nine, gunshot wounds, all from behind. His extensive wounds included a penetrating gunshot to the right side of his head, a shot through his mouth, and two shots to the back. Petitioner's bullets penetrated the victim's head, diaphragm, lungs, kidney, and abdomen (N.T. 2/19/14, 79-116, 143, 157; N.T. 2/25/14, 239).

Petitioner lost consciousness from the graze wound and was taken to the hospital. Detective Nathan Williams went to the hospital the next day to check on his condition. Petitioner repeatedly asked if Detective Williams was the investigator for the murder of his friend, Kyleem Spain. At the police station the next day, petitioner told Detective Williams that he had seen the victim in the bleachers at the basketball game, retrieved his gun from his car, waited for the victim outside, and run up and killed him with his .40 Glock. He said he killed the victim to avenge Spain's death. Petitioner was

not licensed to carry a gun (N.T. 2/19/14, 66-68, 76; 2/20/14, 237-260; N.T. 2/21/14, 156).

On February 27, 2014, a jury sitting before the Honorable Rose Marie Defino-Nastasi of the Philadelphia Court of Common Pleas found petitioner guilty of voluntary manslaughter, carrying a firearm without a license, possession of an instrument of crime, and assault of a law enforcement officer.  On May 16, 2014, petitioner pled guilty to an additional count of carrying a firearm without a license.  That same day, the trial court sentenced petitioner to 10-20 years of incarceration for voluntary manslaughter, a consecutive term of ten to twenty years of incarceration for assault of a law enforcement officer, and concurrent sentences of the gun charges.  Both parties filed motions for reconsideration of the sentence.   On May 29, 2014, the trial court denied both motions.

Petitioner filed a direct appeal to the Pennsylvania Superior Court.   On December 10, 2014, the trial court filed an opinion (attached as Exhibit A).  On March 30, 2015, petitioner filed his brief for appellant (attached as Exhibit B).  On November 23, 2015, the Pennsylvania Superior Court affirmed the judgment of sentence in a memorandum opinion (attached as Exhibit C).  Commonwealth v. Beckett, 134 A.3d 500 (Pa. Super. 2015) (table).   Petitioner did not seek allowance of appeal to the Pennsylvania Supreme Court.

On March 31, 2016, petitioner filed a *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act (PCRA) (attached as Exhibit D).  On July 10, 2017, PCRA counsel filed a "no merit" letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1989) (*en banc*), in which he advised the Court that all the claims in petitioner's *pro se* petition were meritless, and that counsel's independent review of the record had

revealed no meritorious issues that could be raised in a counseled PCRA petition.  On October 30, 2017, counsel filed a supplemental <u>Finley</u> letter to address additional issues raised by petitioner.[3]  On December 8, 2017, the PCRA court dismissed the petition and granted counsel's motion to withdraw.

Petitioner appealed to the Pennsylvania Superior Court.  On April 11, 2018, the PCRA court filed an opinion (attached as Exhibit F).  On July 27, 2018, petitioner filed his brief for appellant (attached as Exhibit G).  On December 18, 2018, the Pennsylvania Superior Court affirmed in a memorandum opinion (attached as Exhibit H).  <u>Commonwealth v. Beckett</u>, 203 A.3d 325 (Pa. Super. 2018) (table).  Petitioner did not seek allowance of appeal to the state Supreme Court.

On June 10, 2019, the United States District Court received the instant petition for a writ of Habeas Corpus.  ECF Doc. 1.  This Court ordered respondents to file an answer.  Respondents answer that petitioner's habeas petition raises only baseless claims.  Accordingly, his petition should be dismissed with prejudice and without a hearing.

<u>**GOVERNING LEGAL STANDARDS**</u>

**A.**   **Exhaustion requirement**

Generally, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).  <u>See also</u> 28 U.S.C.A. § 2254(b)(1).   "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts."  <u>Duncan v.</u>

---

[3]      The two <u>Finley</u> letters are attached collectively as Exhibit E.

Henry, 513 U.S. 364, 366 (1995) (per curiam).  The fair presentation doctrine requires that "the substance of a federal habeas corpus claim must first be presented to the state courts."  Picard v. Connor, 404 U.S. 270, 278 (1971).  "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."  Gray v. Netherland, 518 U.S. 152, 162-163 (1996).  "[M]ere similarity of claims is insufficient to exhaust."  Duncan, 613 U.S. at 366.

Fair presentation also requires a state prisoner to "invok[e] one complete round of the State's established appellate review process."  Carey v. Saffold, 536 U.S. 214, 220 (2002).  "In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct or collateral review."  Moore v. McCready, 2012 WL 6853243 at *6 (E.D. Pa. 2012) (Report and Recommendation).  "The burden of establishing that . . . claims were fairly presented falls upon the petitioner."  Lines v. Larkin, 208 F.3d 153, 159 (3d Cir. 2000).

"The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  Rose v. Lundy, 455 U.S. 509, 518 (1982).  "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."  Id. (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)).

**B.  Procedural default**

"[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion

requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). When a claim is procedurally defaulted, federal habeas review "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Id., 501 U.S. at 750.

"[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." Id. at 753 (emphasis omitted). Generally, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" Id. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

There is, however, a "narrow exception" to the general rule of Coleman: "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez v. Ryan, 132 S.Ct. 1309, 1315 (2012). This "narrow exception" has four requirements: "(1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceedings; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim;' and (4) state law requires that an 'ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding[,]'" or "makes it virtually impossible for appellate counsel to adequately present an ineffective assistance [of trial

counsel] claim on direct review." Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013) (quotation marks and citation omitted). The narrow Martinez exception does not extend to attorney errors on appeal from initial-review collateral proceedings. See Martinez, 132 S.Ct. at 1320 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts"); Norris v. Brooks, 794 F.3d 401, 404 (3d Cir. 2015) ("Martinez made very clear that its exception to the general rule of Coleman applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals").

The miscarriage of justice gateway to defaulted claims first "requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 316. "Evidence is not new if it was available at trial, but a petitioner merely chose not to present it to the jury." Goldblum v. Klem, 510 F.3d 204, 226 n.14 (3d Cir. 2007) (quotation marks and citation omitted). In addition, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. "[T]he Schlup standard is demanding and permits review only in the extraordinary case." House v. Bell, 547 U.S. 518, 538 (2006)

(quotation marks and citations omitted).  If a petitioner's claims have been procedurally defaulted, they may nonetheless be denied on the merits, if that is simpler. 28 U.S.C. § 2254(b)(2).

### C.    Deference to state court adjudication on merits

If a federal constitutional claim was adjudicated on the merits in a state court, a federal habeas court may not grant relief unless the adjudication of the federal claim by the state courts:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court's factual determinations are presumed correct, and the burden of rebuttal is on petitioner, by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

In order to properly apply the standard, a federal habeas court must "determine what arguments or theories supported or… could have supported, the state court's decision; and then… ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]."  Richter, 131 S.Ct. at 786 (emphasis added).  See also Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011) (same).  Section 2254(d) created a standard that was "difficult to meet," because its purpose was to restrict habeas review and so that it would function as "a 'guard against extreme malfunctions in the state criminal

justice systems,' and not as a means of error correction." Greene v. Fisher, 132 S.Ct. 38, 43 (2011), quoting Richter, 131 S.Ct. at 786. "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Richter, 131 S.Ct. at 786, citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The question under the habeas statute is thus not whether the state court's decision was right or wrong, but whether it was reasonable. Renico v. Lett, 559 U.S. 766, 776 (2010). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams v. Taylor, 529 U.S. 362, 411 (2000). Even if a federal court were to find error, if "it is at least reasonable to conclude that there was not, [that] means that the state court's determination to that effect must stand." Early v. Packer, 537 U.S. 3, 11 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 131 S.Ct. at 786-87.

**D.    Deferential Ineffectiveness Standard**

To establish a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must demonstrate both that counsel's performance was so seriously and unreasonably deficient "'that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,'" and that counsel's deficient performance was so prejudicial "'as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland v.

Washington, 466 U.S. 668, 687 (1984)). Because claims of ineffective assistance "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," this standard "must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." Richter, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 689-90). Unreasonably deficient performance means "incompetence under 'prevailing professional norms,'" and not simply a purported deviation from best practices or common custom. Id. at 105 (quoting Strickland, 466 U.S. at 690). Failure to raise or preserve an argument or objection that is devoid of merit cannot be considered deficient or prejudicial. See, e.g., Ross v. Dist.  Att'y of Allegheny Cnty., 672 F.3d 198, 211 (3d Cir. 2012). Counsel's performance must be evaluated from the perspective of counsel at the pertinent time, and not in "the harsh light of hindsight." Richter, 562 U.S. at 107 (citation and internal quotations omitted). Moreover, counsel's performance, including "counsel's attention to certain issues to the exclusion of others," must strongly be presumed to have fallen within the "'wide range' of reasonable professional assistance." Id. at 104, 109 (quoting Strickland, 466 U.S. at 689).

Even in the rare cases in which counsel's performance is shown to have been unreasonably deficient, the petitioner bears the additional burden of showing that it is at least reasonably probable that the outcome of the proceeding would have been different but for counsel's deficient performance.  See, e.g., Wong v. Belmontes, 558 U.S. 15, 19-20 (2009) (per curiam). This requires the likelihood of a different outcome to be "substantial, not just conceivable." Richter, 562 U.S. at 112. Although the threshold for showing that a different outcome was reasonably probable is, at least in theory, lower

11

than the threshold for showing that a different outcome was more likely than not, the difference between the two standards is "slight" and "matters 'only in the rarest case.'" Richter, 562 U.S. at 111-12 (quoting Strickland, 466 U.S. at 697).

Finally, when the state courts have adjudicated and rejected a claim of ineffective assistance of counsel on the merits, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Richter, 562 U.S. at 105. Both legal standards are "'highly deferential,' and when the two apply in tandem, review is "'doubly' so." Id. (quoting Knowles v. Mirzayance, 556 U.S. 111,123 (2009)). The generality of the legal standard for assessing claims of ineffective assistance makes "the range of reasonable applications" of that standard, for purposes of § 2254(d), "substantial." Id. In short, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

## **DISCUSSION**

**A.**     **Petitioner's claim that the trial court violated his constitutional rights by admitting evidence to which he opened the door is defaulted and meritless.**

Petitioner claims that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by allowing the Commonwealth to introduce his prior arrest for gun possession after petitioner opened the door to the evidence through his testimony.  ECF Doc at 7.[4]  Petitioner's claim is defaulted and meritless.

---

[4]     Petitioner does not specify exactly which constitutional right he feels was violated.  Respondents will presume that he is raising a Due Process claim, as it is the only even remotely applicable right in this instance.

As an initial matter, petitioner's claim is defaulted.  While petitioner complained on direct appeal about the admission of this prior arrest under state law, he never mentioned the United States Constitution.  Exhibit B, 14-18.  It is also now too late for him to raise the claim as a federal due process claim in state court because he would be precluded from doing so under the waiver and time bar provisions of the PCRA.  See 42 Pa.C.S. § 9543(a)(3) (To raise a cognizable claim, a PCRA petitioner must prove his claim is not previously litigated or waived); 42 Pa.C.S. § 9545(b)(1) (PCRA's time bar provision, requiring petition be filed within one year of the finality of the judgment of sentence).  Thus, his claim is defaulted.  See Keller v. Larkins, 251 F.3d 408, 414 (3d Cir. 2001) (claim defaulted where habeas petitioner had in state court raised challenge to evidentiary ruling under state rules of evidence without providing notice that he was asserting a federal constitutional claim).  Petitioner does not even acknowledge the default, much less present any reason to excuse it.  This claim is inexcusably defaulted and should be rejected for this reason alone.

In any event, petitioner also fails to demonstrate a constitutional violation. Petitioner fails to "identify clearly established Supreme Court precedent that such evidence constitutes a violation of due process."  Allison v. Superintendent Waymart SCI, 703 Fed.Appx. 91, 96 (3d Cir. 2017).  In fact, the Supreme Court has "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."  Id. (quoting Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991)).

The only Supreme Court case petitioner cites in his memorandum of law is Lisenba v. People of State of California, 314 U.S. 219 (1941) (ECF Doc 2 at 32).

However, that case not only fails to support his claim, it in fact undermines it. See Lisenba, 314 U.S. at 228-229 ("We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence. . . . The fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process").[5]   Thus, petitioner has failed to establish a basis for habeas relief. See Allison, 703 Fed.Appx. at 96-97 (state court's admission of prior bad acts does not violate clearly established Supreme Court law; therefore, habeas relief is properly denied).

Finally, it bears noting that the state court's basis for its admission of the evidence was well-reasoned.  On direct examination, trial counsel asked petitioner if he began carrying a gun in March, 2011, and petitioner responded that he "started carrying a gun like around the end of July, August."  N.T. 2/24/14, 211.  The trial court ruled that the defense had thereby opened the door to the prosecution to impeach this testimony by introducing evidence that police found him carrying a weapon in April, 2011.  N.T. 2/25/14, 131; Trial Court Opinion (Exhibit A) at 16.  The trial court issued a cautionary instruction that the jury could only use the evidence of the prior gun arrest for the limited purpose of showing that petitioner carried a gun in April, 2011 and not to show that he "is a person of bad character or criminal tendencies from which" the jury could infer guilt.  N.T. 2/26/14, 167-168.  The Superior Court agreed that this evidentiary ruling was a proper exercise of the trial court's discretion.  Exhibit C at 5.  The use of the opening

---

[5]   Notably, the Court in Lisenba granted *certiorari* from the state supreme court's denial of habeas corpus.  Thus, the matter was not subject to the limitations of federal habeas corpus review or the AEDPA statute that did not yet exist.

the door doctrine is well-recognized and has even been explicitly approved by the Supreme Court in federal prosecutions. <u>See</u> <u>Walder v. United States</u>, 347 U.S. 62, 64, 74 S.Ct. 354, 355, 98 L.Ed. 503 (1954) (criminal defendant's denial that he never possessed drugs could be rebutted by evidence of prior possession). <u>See</u> <u>generally</u> Samuel H. Ritterman, <u>Closing the Door to the Truth in State v. Vandeweaghe</u>, 36 Rutgers L.J. 261, 265–66 (2004) (giving historical background of opening the door doctrine). Additionally, the trial and Superior Courts persuasively articulated how the admission of the evidence did not prejudice petitioner. Exhibit A at 16; Exhibit C at 6. Therefore, habeas relief should be denied.

**B.**     **Petitioner's claim that the trial court violated his constitutional rights by not allowing him to impeach a detective with an activity sheet that the detective did not write is defaulted and meritless.**

Petitioner claims the trial court violated his constitutional rights by not allowing him to impeach a detective with an activity sheet that the detective did not author.[6] This claim is defaulted and meritless.

As with the previous claim challenging the trial court's evidentiary ruling, this claim is defaulted. On direct appeal, petitioner challenged the ruling only on the basis that it allegedly violated the definition of "relevant evidence" under the Pennsylvania Rules of Evidence. Brief for Appellant (Exhibit B), 19-20. Petitioner did not mention the federal constitution or due process. Because a federal constitutional claim would be procedurally barred under the PCRA now, it is defaulted.

Also, as with his previous claim, petitioner fails to cite any clearly established Supreme Court law that this ruling allegedly violated. To the contrary, the principle that

---

[6]     As with the previous claim, Respondents will presume this is a Due Process claim.

witnesses may not be impeached with writings that they did not author is well-accepted.

See, e.g., United States v. Severson, 49 F.3d 268, 272 (7th Cir. 1995) (trial court properly did not allow defense to impeach detective with statements that she did not adopt).   As the trial court pointed out, to the extent petitioner wished to introduce evidence of the activity sheets, it was incumbent on him to call the detectives who authored them.   Exhibit A at 18 (adopted by Superior Court, Exhibit C at 8 n.8).   The court's routine application of state hearsay rule does not merit habeas relief.

**C.     Petitioner's claim that the trial court violated his constitutional rights by excluding two Facebook posts by the victim, while allowing several, is defaulted and meritless.**

Petitioner claims that the trial court violated his constitutional rights by not allowing him to introduce into evidence two Facebook posts by the victim, even though the court allowed him to introduce several other posts in which the victim discussed violence.   This claim is defaulted and meritless.

As with his previous two claims, this claim is defaulted.   On direct appeal, petitioner raised this as a claim of state court error in its application of the Pennsylvania Rules of Evidence on relevancy (Exhibit B at 22-26).   He did not mention the federal constitution or due process. As it is now too late for him to return to state court to raise this as a federal constitutional claim, and the claim would be waived under the PCRA in any case, it is defaulted.

This claim is also meritless.   As with his previous challenges to the state court's evidentiary rulings, petitioner still fails to cite what clearly established Supreme Court law was allegedly violated here.   Indeed, the Supreme Court has recognized its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." Crane v. Kentucky, 476 U.S. 683, 689 (1986).   While the trial court

16

excluded a reference in the victim's Facebook posting to unrelated, famous murderers, as well as what appeared to be a lyric regarding blowing out brains (N.T. 2/19/14, 47, 54), the trial court allowed far more posts than it excluded.  Of those it admitted, several made references to violence, including: "Stab a nigga n da fukn bak 4real," (N.T. 2/24/14, 147), that the victim "doesn't give a fuck about anything or anybody. Its hot, time to get in your bags" (id. at 149);[7] "ALOT OF MOTHERFUCKAS not gonna make it thru this summer" (id. at 150); "Its gonna be a hot fucking summer niggas better strap up cuz half of ya'll not gonna make it. Killer season 4real" (id. at 152); "Im tryin see MORE BODIES, all caps, laid out in 2011" (id. at 171); and "Summer equals killa season" (id. at 187).  Petitioner thoroughly conveyed to the jury that the victim had written several Facebook posts about violence.  Thus, the absence of two more such posts did not prejudice petitioner.  Any conceivable error by the trial court (there was none) was harmless.  Habeas relief should be denied.

**D.** **Petitioner's claim that the trial court committed constitutional error by not allowing the jury to take a physical copy of his confession into the jury room – although the court projected it on a screen for the jury while reading it aloud – is defaulted and meritless.**

Petitioner claims that the trial court violated his constitutional rights when it followed the state rules of evidence in denying his counsel's request to allow the jury to take his confession into the jury room.  This claim is defaulted and meritless.

As with his previous three claims, this claim is defaulted.  On direct appeal, petitioner challenged the trial court's application of Pennsylvania Rule of Evidence 646 (prohibiting a confession in the jury room).  At no point, did petitioner cite the federal

---

[7]     Petitioner testified that he interpreted "bags" as "body bags" (id. at 149)

constitution or due process.  As this claim is now time-barred and waived under the PCRA, the claim is defaulted.

The claim is also meritless.  Once again, petitioner fails to cite any established Supreme Court law that the state court supposedly violated here.  Indeed, the Supreme Court typically does not impose constitutional requirements on the application of state evidentiary rules.  Crane, supra.  Here, the trial court was bound by Pennsylvania Rule of Evidence 646, which explicitly prohibited sending the confession into the jury room. The Superior Court found that the trial court properly applied the rule, which it held to be "not subject to waiver, regardless of the parties' agreement."  Exhibit C, at 11 n.10.[8] The trial court instead accommodated petitioner by allowing the jury to view the confession on a screen in the courtroom as it was read aloud, a procedure also approved by Pennsylvania law.  Exhibit C, at 11.  There are no grounds for habeas relief.  See Whitehead v. Rozum, CIV.A. 08-259, 2008 WL 3166695, at *7 (W.D. Pa. Aug. 5, 2008) (decision to allow jury to review confession during deliberations is a matter of state evidentiary law that is not properly before the court on habeas review).

**E.     Petitioner's claim that trial and direct appeal counsel were ineffective for not challenging his sentence for voluntary manslaughter is meritless.**

Petitioner claims that trial and direct appeal counsel were ineffective for not arguing that the sentencing court imposed an excessive sentence for voluntary manslaughter without stating its reasons for departing from the sentencing guidelines. ECF Doc 2, at 15.  He also claims that PCRA counsel was ineffective for not raising the claim on PCRA review.  Id.  These claims are all meritless.

---

[8]     Indeed, the Superior Court found that Pennsylvania law had consistently found sending a confession back into the jury room to be reversible error.  Exhibit C at 10-11.

Regarding the allegation of PCRA counsel's ineffectiveness, petitioner's claim fails.  First, the claim is not cognizable.  <u>See</u> 28 USCA § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"); <u>Jordan v. Rozum</u>, CV 13-2503, 2016 WL 5673913, at *4 (E.D. Pa. Oct. 3, 2016) (memorandum opinion) ("section 2254(i) clearly forecloses [the petitioner's] ability to assert a standalone claim of ineffective assistance of PCRA counsel").  Second, although PCRA counsel filed a <u>Finley</u> (no merit) letter, the state courts still reviewed the claim on the merits as raised by the petitioner *pro se*.  Thus, there was no prejudice.  Finally, the claim is meritless for reasons given below.

Regarding the allegation of trial counsel's ineffectiveness, the claim fails at the outset because counsel did in fact challenge the sentence for voluntary manslaughter. Trial counsel filed post-sentence motions complaining that the sentence for voluntary manslaughter was excessive and outside the guidelines.  Exhibit  I at 1-3.

Regarding the allegation of direct appeal counsel's ineffectiveness, the claim is also meritless.   While direct appeal counsel had initially raised the claim in the statement of matters to be complained of on appeal, he ultimately decided to pursue four different claims instead.[9]  In light of the great deal of deference given to the trial court in the discretionary aspects of sentencing (and the concomitant improbability of prevailing on a discretionary sentencing claim on appeal),[10] it is facially obvious why

---

[9]     Notably, petitioner has raised all four of those claims here.

[10]   <u>See Commonwealth v. Walls</u>, 926 A.2d 957, 961 (Pa. 2007) (A reviewing court is not to reverse a sentence "absent a manifest abuse of discretion;" <u>id.</u> at 964 (rejection of a

direct appeal counsel would instead pursue the preserved objections to the lower court's evidentiary rulings.  See Jones v. Barnes, 463 U.S. 745 (1983) (since appellate counsel is presumed to have chosen proper issues, given constraints of appellate litigation, counsel need not forward every non-frivolous issue that may have been preserved).  Moreover, in the reviewing this ineffectiveness claim on PCRA appeal, the Superior Court found that the sentencing court had adequately explained its reasons for sentencing above the guidelines; namely, that in shooting the victim, petitioner had unloaded his gun in a busy neighborhood where many people, including children, were outside.  Exhibit H at 6-7.  The Superior Court therefore found that the underlying claim of ineffectiveness was meritless and there was no reasonable likelihood it would have reversed the lower court had it been raised on direct appeal.  Id. at 7-8.  While petitioner might be unhappy with this outcome, he fails to demonstrate how this was at all an unreasonable application of the ineffectiveness test as set forth by the Supreme Court in Strickland.  Indeed, it was not unreasonable.  See Hill v. Fisher, CIV.A. 12-4918, 2015 WL 3767465, at *10 (E.D. Pa. June 16, 2015) (where Superior Court rejected claim of ineffective assistance of counsel for not raising discretionary aspects of sentence on the grounds that there was no abuse of discretion in sentencing outside the guideline range, it did not apply the law unreasonably or in contradiction of established Federal law).

**F.     Petitioner's claim that trial and direct appeal counsel were ineffective for not raising a baseless merger claim is meritless.**

Petitioner claims that trial and direct appeal counsel were ineffective for not claiming that the charge of voluntary manslaughter for killing a civilian merged with the

_____

sentence as unreasonable should "occur infrequently" even where the sentence is outside the guideline ranges).

charge of "assault of a police officer" for firing shots at a police officer.  ECF Doc 2, at 16.  This claim is frivolous, as the two different convictions were for different criminal acts.  Exhibit H, 8-9.  Under Pennsylvania law, "[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act . . . ." 42 Pa.C.S. § 9765. Petitioner was convicted of voluntary manslaughter for killing the civilian victim Kevin Jones (N.T. 2/27/14, 5).  Petitioner was also convicted of assault of a law enforcement officer for shooting at Officer John O'Connor (N.T. 2/27/14, 5).  As the Superior Court concluded, "it is apparent that [petitioner's] crimes did not arise from a single criminal act."  Exhibit H at 9.  The state court properly analyzed the underlying merits of the claim.  See Wilkerson v. Superintendent Fayette SCI, 871 F.3d 221, 233 (3d Cir. 2017), cert. denied sub nom. Wilkerson v. Lane, 138 S.Ct. 1170, 200 L.Ed.2d 319 (2018) (Superior Court did not engage in unreasonable application of clearly established Federal law by determining that there was no double jeopardy concern where jury convicted Wilkerson of attempted murder based on his shooting the victim and aggravated assault based on his beating him); Robinson v. Sup't, SCI Somerset, CIV.A. 13-6918, 2014 WL 7232239, at *13 (E.D. Pa. Dec. 17, 2014), aff'd sub nom. Robinson v. Superintendent, SCI Somerset, 15-1147, 2018 WL 878922 (3d Cir. Feb. 14, 2018) (upholding sentencing court imposing consecutive sentences for aggravated assault and attempted murder where "the crime of attempted murder was based on the shooting and the aggravated assault was based on the pistol whipping").  Thus, the Superior Court properly rejected this ineffectiveness claim, and no habeas relief is due.

**G.**   **Petitioner's claims that the state's postconviction process was flawed are not cognizable and are meritless.**

Petitioner raises two claims that his constitutional rights were supposedly violated by alleged flaws in the state post-conviction process.  (ECF Doc 17-18).  Both claims are not cognizable and are meritless.

The purpose of habeas corpus review is to determine whether the judgment of conviction that is the reason for the applicant's incarceration was obtained in violation of the Constitution or federal law, not to determine whether the postconviction process was flawed.  Hence, claims of error in state postconviction proceedings are not cognizable on federal habeas review. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation").

In any event, his claims are meritless.  Petitioner essentially argues that the PCRA court did not independently consider his claims or give him notice of the reasons for its intent to dismiss the petition.  The Superior Court cited to the PCRA court's certification that it independently reviewed the record to reject the first assertion.  Exhibit H at 11.  The Superior Court cited petitioner's ability to meaningfully respond to the court's notice as evidence rebutting his second assertion.  Exhibit H at 12.[11]  His meritless habeas petition should be rejected.

---

[11]   Moreover, in light of petitioner's inability at the state or federal level to demonstrate any flaw with the PCRA court's rulings on his meritless claims, he clearly suffered no prejudice.

**WHEREFORE**, respondents respectfully request that the petition be dismissed with prejudice and without a hearing, and that a Certificate of Appealability be denied.

Respectfully submitted,


*/s/ (electronically filed)*
SAMUEL H. RITTERMAN
Assistant District Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAHMIK BECKETT** | : | **CIVIL ACTION** |
| **v.** | : | |
| **KEVIN KAUFFMAN, et al** | : | **NO.  19-2525** |

**CERTIFICATE OF SERVICE**

I, SAMUEL H. RITTERMAN, counsel for the respondent, hereby certify that on September 17, 2019, caused a copy of the foregoing motion to be served by first-class U.S. Mail on petitioner at the following addresses:

Smart Communications/PADOC
Rahmik Beckett, LN4378
SCI Huntingdon
PO Box 33028
St. Petersburg, FL 33733

Rahmik Beckett, LN4378
SCI Huntingdon
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652

*/s/ Samuel H. Ritterman*
_____
SAMUEL H. RITTERMAN
Assistant District Attorney